**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIAN COSS and MARIBEL OCAMPO, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:22-cv-02480 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SNAP INC., | ) ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

NOW COME the Plaintiffs, ADRIAN COSS and MARIBEL OCAMPO, by and through their counsel, James C. Vlahakis, and state as follows:

## I. Introduction & Summary of the Illinois Biometric Information Privacy Act

1. Plaintiffs MARIBEL OCAMPO and ADRIAN COSS (hereafter "Plaintiffs") are citizens of Illinois and reside in the Northern District of Illinois.

2. Plaintiffs allege that Defendant violated Plaintiffs' privacy rights as codified by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

3. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

4. BIPA's express Legislative Findings provide as follows:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics,

1

> however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
>
> (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
>
> (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
>
> (f) The full ramifications of biometric technology are not fully known.
>
> (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

5.      BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

6.      The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or

> customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019)).

7.     Defendant Snap Inc. ("Defendant" or "Snap") is a Delaware corporation with its principal place of business located in Santa Monica, California.

8.     Defendant is a publicly traded company, and is listed on the New York Stock Exchange under the trading symbol "SNAP."

9.     Defendant is the owner and operator of a "Snapchat".

10.     Defendant has described itself as "a camera company." See, Defendant's Form 10-Q for the quarterly period ending March 31, 2022, at p. 10.

11.     Snap's Form 10-Q for the period ending March 31, 2022, is located at https://investor.snap.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=15745081[1]

12.     Defendant has described "Snapchat" as its "flagship product. *Id.*

13.     Snapchat "is a camera application that was created to help people communicate through short videos and images called 'Snaps.'" *Id.*

14.     As detailed below, Snapchat utilizes technology that is subject to BIPA.

---

[1] A pdf version of this document is hosted at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001564408/c10435fc-36f6-4f32-b8f0-f1617a9e1e8a.pdf

15.    As detailed below, certain technology utilized by Snapchat required Defendant to obtain informed written consent from Shapchat users before Defendant was able to acquire the biometric identifiers and/or biometric information of Snapchat users.

16.    Plaintiff Coss has utilized the Snapchat app. to create and post Snaps by and through the Snapchat app.

17.    Plaintiff Ocampo has utilized the Snapchat app. to create and post Snaps by and through the Snapchat app.

18.    Plaintiff Coss has utilized the Snapchat app. to create and post photographic based Snaps where the Snaps involved their unique facial features.

19.    Plaintiff Ocampo has utilized the Snapchat app. to create and post photographic based Snaps where the Snaps involved their unique facial features.

20.    Plaintiff Coss has utilized the Snapchat app. to create and post video based Snaps where the Snaps involved their unique facial features.

21.    Plaintiff Ocampo utilized the Snapchat app. to create and post video based Snaps where the Snaps involved their unique facial features.

22.    Plaintiff Coss has utilized the Snapchat app. to create and post Snaps that depicted their unique voices.

23.    Plaintiff Ocampo utilized the Snapchat app. to create and post Snaps that depicted their unique voices.

24.    As described below, Defendant has violated Plaintiffs' privacy rights in violation of rights and prohibitions set forth by BIPA.

25.    On November 26, 2021, Plaintiff Coss has opted out of Defendant's arbitration clause that was contained within Defendant's Terms of Service dated November 15, 2021.

26.     Defendant acknowledged receipt of Plaintiff Coss' opt-out request at 1:13 p.m. on November 26, 2021.

27.     On November 28, 2021, Plaintiff Ocampo has opted out of Defendant's arbitration clause that was contained within Defendant's Terms of Service dated November 15, 2021.

28.     In November and December of 2020, More than forty (40) Illinois users of Snapchat have opted out of opted out of Defendant's arbitration clause that was contained within Defendant's Terms of Service dated November 15, 2021.

**II.     Jurisdiction and Venue**

29.     Section 20 of BIPA provides Plaintiffs with a private right of action to assert violations of BIPA. *See, Rosenbach*, 432 Ill. Dec. at 660, 129 N.E.3d at 1203; *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

30.     The Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), provides jurisdiction for civil action on the basis of a diversity of citizenship, if the amount in controversy exceeds $5,000,000.

31.     CAFA, in relevant part, states as follows:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]
>
> ***
>
> (6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

32.     For federal jurisdiction to exist under CAFA, more than 100 putative class members should theoretically exist. 28 U.S.C. § 1332(d)(5)(B).

33.     Under CAFA, claims of individual class members are aggregated for the purposes of ascertaining whether jurisdiction is proper. *See* 28 U.S.C. § 1332(d)(6).

34.     As discussed in the previous Section, Plaintiffs are citizens of the State of Illinois and Defendant is a Delaware corporation with its principal place of business located in Santa Monica, California. Based upon this diversity of citizenship, Plaintiffs have satisfied Section 1332(d)(2) of CAFA.

35.     This civil action is styled as a putative class action where liquidated damages for *each* violation of BIPA may result in liquidated damages of up to $5,000.

36.     Defendant's most recent Securities and Exchange Commission Form 10-Q for the quarterly period ending March 31, 2022, claims that "Daily Active Users, or DAUs, increased 18% year-over-year to 332 million in Q1 2022." See, Defendant's Form 10-Q for the quarterly period ending March 31, 2022, at p. 25.

37.     Defendant defines "Daily Active Users" "as a registered Snapchat user who opens the Snapchat application at least once during a defined 24-hour period." *Id.* at p. 26.

38.     Given the volume of Snapchat users, is plausible to allege that at least 50,000 to 500,000 Snaps have been created and posted by putative class members who are residents of the State of Illinois.

39.     CAFA jurisdiction is satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because even if a trier of fact determines that Defendant negligently violated BIPA, liability as to 5,001 violations would result in 5 million dollars in liquidated damages.

40.     CAFA jurisdiction is also satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because if a trier of fact in this civil action determines that Defendant intentionally or recklessly violated a provision of BIPA, a finding of 1,001 violations would result in over 5 million dollars of liquidated damages.

6

41.     As reported in Defendant's Form 10-Q for the quarterly period ending March 31, 2022, Defendant has recognized that BIPA litigation "could seriously harm our business". See, Defendant's Form 10-Q for the quarterly period ending March 31, 2022, pdf at p. 62.

42.     Defendant's Form 10-Q for the quarterly period ending March 31, 2022, states as follows:

> **From time to time, we are involved in class-action lawsuits and other litigation matters that are expensive and time-consuming and could seriously harm our business.**
>
> We are involved in numerous lawsuits, including putative class-action lawsuits brought by users and investors, some of which may claim statutory damages. We anticipate that we will continue to be a target for lawsuits in the future. Because we have millions of users, class-action lawsuits against us that are purportedly filed by or on behalf of users typically claim enormous monetary damages in the aggregate even if the alleged per-user harm is small or nonexistent. For example, in November 2020, a putative class filed an action against us in Illinois, alleging that we violated Illinois' Biometric Information Privacy Act, or BIPA, with respect to many Illinois users of Snapchat and that we are liable to those users for statutory damages. We compelled arbitration, which the court granted, dismissing the case and ordering the parties to arbitrate the matter; that ruling compelling arbitration was recently upheld on appeal. Some plaintiffs' attorneys have also indicated a desire to initiate arbitrations against us, arguing that we violated BIPA, in some cases on behalf of large numbers of Illinois users. We believe we have meritorious defenses to these lawsuits and arbitrations, but an unfavorable outcome in these lawsuits or arbitrations could seriously harm our business.

See, Defendant's Form 10-Q for the quarterly period ending March 31, 2022, at p. 62.

43.     28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

44.     Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's below described violations of BIPA took place within the State of Illinois and this judicial district.

45.     Venue is also proper in this judicial district because Plaintiffs are citizens of the State of Illinois and they seek to vindicate their rights as provided by Illinois law.

46.     Further, venue is proper in this judicial district because Defendant's conduct has harmed Plaintiffs and putative class members who are all citizens of the State of Illinois and Plaintiffs live within the confines of the Northern District of Illinois.

## II.  Defined Terms, Statutory Prohibitions and Allowable Damages

47.     BIPA defines "Biometric identifier" as follows:

> "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

740 ILCS 14/10.

48.     BIPA defines "Biometric information" and "Confidential and sensitive information" as follows:

> "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

> "Confidential and sensitive information" means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive

information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

740 ILCS 14/10.

49.     Section 15(a) of BIPA requires private entities to develop written policies regarding the retention and destruction of "biometric identifiers" and "biometric information":

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

50.     "Section 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected. The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime." *Fox*, 980 F.3d at 1155.

51.     "It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Id.*

52.     As set forth below, Defendant has violated Section 15(a) of BIPA because it appears that it has failed to develop and publish written policies regarding the retention and destruction of "biometric identifiers" and "biometric information".

53. Section 15(b) of BIPA requires private entities to obtained informed written consent from persons before a private entity can obtain their biometric identifiers and/or biometric information.

54. Section 15(b) of BIPA specifically states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

55. BIPA defines "[w]ritten release" as "informed written consent". 740 ILCS 14/10.

56. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

57. Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

58. The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

59.     Defendant has violated Section 15(b) of BIPA because it collected Plaintiffs' biometric information without first obtaining informed written consent from Plaintiffs.

60.     Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

61.     Section 15(c) "flatly prohibits" certain for-profit transactions involving biometric data. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021).

62.     Section 15(c) does not allow an entity to avoid liability merely by obtaining the informed consent of the individual whose biometric data it profits from.

63.     Section 15(c)'s prohibition on for-profit transactions involving biometric data is "the same kind of general regulation as the duty to create and publish a retention and destruction schedule found in section 15(a)." *Thornley*, 984 F.3d at 1247.

64.     Defendant has violated Section 15(c) of BIPA because it has sold, leases, traded, and/or otherwise profited from its use of Plaintiffs' biometric identifiers and/or their biometric information.

65.     Section 15(d) of BIPA prohibits private entities from disclosing, redisclosing, or otherwise disseminating a person's biometric identifier or biometric information with first obtaining informed written consent of the subject.

66.     Defendant has violated Section 15(d) of BIPA because it has disclosed, redisclosed, and/or otherwise disseminated Plaintiffs' biometric identifier and/or biometric information without their informed written consent.

67.     In enacting BIPA, the Illinois legislature determined that violations of BIPA should result in awards of liquidated damages.

68.     Section 20 of BIPA provides that "[a] prevailing party may recover for each violation: ... (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater" and that "[a] prevailing party may recover for each violation: ... (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater". 740 ILCS 14/20(1)-(2).

69.     Additionally, in enacting BIPA, the Illinois legislature determined that "[a] prevailing party" in a BIPA action "may recover ... (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses" and injunctive relief. 740 ILCS 14/20(3)-(4).

**III. Defendant's Violations of BIPA**

70.     This putative Class Action Complaint, brought on behalf of citizens of the State of Illinois, alleges that Defendant has violated Sections 15(a), 15(b), 15(c) and 15(d) of BIPA.

71.     Defendant has violated BIPA because its technology works by imaging a user's face to capture and utilize a user's biometric identifiers and/or biometric information without a user's informed written consent.

72.     Defendant has acquired Looksery, Inc., a company that developed an app. (Looksery) which used facial recognition technology for the purpose of capturing and modifying a person's facial features in real-time.

73.     Defendant modified the Looksery app. and the Looksery app. became known as a Snapchat feature referred to as "Lenses".

74.     Additionally, Defendant has applied for at least one patent, where the patent application describes the use of "[a] facial recognition technique". See, Patent No.

12

US9396354B1, found at https://patents.google.com/patent/US9396354 (last visited 5/3/2022).

75. Defendant requires users of Snapchat to provide Defendant with access to their smartphones' cameras.

76. According to Defendant, "[m]any of our services require us to collect images and other information from your device's camera and photos."

77. Defendant has also users and potential users "won't be able to send Snaps or upload photos from your camera roll unless we can access your camera or photos."

78. As alleged herein, Defendant has failed to properly disclose to Plaintiffs that its Snapchat app would collect and monetize the "biometric identifiers" and/or "Biometric information" (hereafter "Biometric(s)") of Plaintiffs without their informed written consent.

79. As alleged herein, Defendant has failed to properly disclose to putative class members that its Snapchat app would collect and monetize the "biometric identifiers" and/or "Biometric information" (hereafter "Biometrics") of putative class members without their informed written consent.

80. Defendant has collected the Biometrics of Plaintiffs and putative class members in violation of the prohibitions set forth by BIPA.

81. For example, when Plaintiffs and putative class members have utilized the Snapchat app., they have utilized a feature called "Lenses" (hereafter "Lenses Feature", where Lenses Feature allowed them to modify their facial features with special effects.

82. Snatpchat's Lenses Feature worked by having users (a) open up the Camera screen in the Shapchat app., on their smartphone, (b) "press" and aim their smartphone at a user's face press, (c) "swipe" left to "select" a particular Lenses, (d)

follow any prompts (such as "Raise Your Eyebrows" and (e) "tap" the "capture button" to take a Snap or press and hold the "capture button" to take a Snap video.

83. Snapchat's Lenses Feature involved and/or involves the use of technology to create a face scan or face template of a user where the Feature involved creating, obtaining and storing of a user's unique "biometric identifiers" and/or "Biometric information".

84. Snatpchat's Lenses Feature involved and/or involves the collection, use, modification, monetization and/or storage of a user's "biometric identifiers" and/or "Biometric information" in violation of Section 15(1) of BIPA.

85. For example, each time Plaintiffs used the Lenses Feature, the Snapchat app. scanned their faces and stored the resulting image.

86. Each time Plaintiffs used the Lenses Feature, the Snapchat app. scanned their faces to create a detailed map or digital depiction of their facial features.

87. Each time Plaintiffs used the Lenses Feature was used by Plaintiffs, the Snapchat app. scanned the faces of Plaintiffs, which resulted in Defendant obtaining and/collecting Plaintiffs' unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

88. Each time a Defendant's Lenses Feature scanned Plaintiffs' faces and obtained their unique "biometric identifier" or "biometric information", the Lenses Feature did so *without* Plaintiffs' informed written consent.

89. Further, when putative class members used the Lenses Feature, the Snapchat app. scanned their faces to create a detailed map of their facial features.

90. Each time putative class members used the Lenses Feature, the Snapchat app. scanned their faces to create a detailed map or digital depiction of their facial features.

91. Each time putative class members used the Lenses Feature, the Snapchat app. scanned their faces, which resulted in Defendant obtaining and/or collecting the unique "biometric identifier" or "biometric information" of each putative class members - as these terms are defined by BIPA.

92. Each time Defendant's Lenses Feature obtained and/or collected the unique "biometric identifier" or "biometric information" of putative class members, it did so *without* their informed written consent.

93. The Snapchat app. also utilizes so-called "Sponsored Lenses" that are utilized by in conjunction with Defendant's sponsors.

94. On information and belief, "Sponsored Lenses" have violated Section 15(b) of BIPA by obtaining and/or collecting the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members – without their informed written consent.

95. The Snapchat app. also scanned and modified the facial features of Plaintiffs and putative class members with certain user enabled filters (hereafter "Filters").

96. Snatpchat's Filters involve and/or involved the collection, use, modification, monetization and/or storage of the "biometric identifiers" and/or "Biometric information" of Plaintiffs and putative class members.

97. Each time Plaintiffs used a Filter, the Snapchat app. scanned their faces and obtained their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

98. Each time Plaintiffs used a Snapchat app. Filter a scan of their faces, the Snapchat app. collected and/or obtained their unique "biometric identifier" or "biometric information" without their informed written consent.

99.     Each time putative class members used a Filter, the Snapchat app. scanned their faces and obtained their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

100.    Each time putative class members used a Snapchat app. Filter a scan of their faces, the Snapchat app. collected and/or obtained their unique "biometric identifier" or "biometric information" without their informed written consent.

101.    Defendant has failed to fully and properly disclose to Plaintiffs and putative class members that its Filters collected, captured, or otherwise obtained their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

102.    Defendant has failed to disclose to Plaintiffs and putative class members that its Filters collected, captured, or otherwise obtained their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

103.    Defendant failed to obtain Plaintiffs' informed written consent prior to obtaining their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

104.    Defendant failed to obtain putative class members informed written consent prior to obtaining their unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

105.    Defendant has failed to disclose how it uses the "biometric identifier" and "biometric information" they have obtained from Plaintiffs and putative class members.

106.    Defendant has failed to disclose to Plaintiffs and putative class members whether it *has* shared their "biometric identifier" or "biometric information" with third parties.

107. Defendant has failed to disclose to Plaintiffs and putative class members whether it *will* share their "biometric identifier" or "biometric information" with third parties.

108. Defendant has failed to disclose to Plaintiffs and putative class members whether it has sold their "biometric identifier" or "biometric information" to third parties.

109. Each of the proposed class definitions are limited to BIPA violations occurring within the past five (5) years from the filing of this putative class action.

**IV. Causes of Action**

**Count I – Asserting Violations of Sections 15(a) of BIPA**

110. Plaintiffs allege and reassert Paragraphs 1-109 as if fully set forth above:

111. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 626 (7th Cir. 2020).

112. Section 15(a) of BIPA states as follows:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for *permanently* destroying biometric identifiers and biometric information *when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity,* whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

See, 740 ILCS 14/15(a) (emphasis supplied).

113. Defendant has failed to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" as required by 740 ILCS 14/15(a).

114. On information and belief, Defendant does not destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied" as required by 740 ILCS 14/15(a).

115. On information and belief, Defendant has failed to develop, publicly disclose, and otherwise comply with a data-retention schedule and guidelines for the permanent destruction of "biometric identifiers" and "biometric information".

116. Defendant's most recent Privacy Policy confusingly refers to "Third-Party Content and Integrations" and broadly states that "[o]ur services may contain third-party content and integrations."

117. While Defendant's most recent Privacy Policy states that "[e]xamples include third-party integrations in the Camera, third-party games in Chat, and third-party Snap Kit integrations", Defendant's Privacy Policy does not fully explain what types of information is shared with unidentified third-parties.

118. Instead, Defendant's most recent Privacy Policy confusingly and broadly states the following, "[t]hrough these integrations, you *may* be providing information to the third party as well as to Snap." (emphasis supplied)

119. Rather than explain what this phrase means, Defendant's Privacy Policy attempts to disavow any responsibility for any third-party content sharing by saying, "[w]e are not responsible for how those third parties collect or use your information."

120. Defendant's failure to comply with BIPA's retention-and-destruction policy results Article III injury. "An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020).

121. On information and belief, Defendant does not destroy a user's "biometric identifiers" or "biometric information" "within 3 years of the individual's last interaction with the private entity" as required by 740 ILCS 14/15(a).

122. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to develop and publicly disclose an easily explained and/or understood data-retention schedule for the *permanent* destruction of "biometric identifiers" and/or "biometric information" after each user's Snap has purportedly expired.

123. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to develop and publicly disclose an easily explained and/or understood data-retention guidelines for the *permanent* destruction of "biometric identifiers" and/or "biometric information" after each user's Snap has purportedly expired.

124. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to comply with a data-retention schedule and guidelines for the *permanent* destruction of "biometric identifiers" and/or "biometric information" after each user's Snap has purportedly expired.

125. Defendant's violations of Section 15(a) of BIPA has resulted in the *unlawful retention* and sharing of users' "biometric identifiers" and/or "biometric information" with currently unknown third-parties.

126. Defendant's *failure to comply* with a retention-and-destruction policy has harmed Plaintiffs and putative class members where Defendant's unlawful retention of "biometric identifiers" and/or "biometric information" appears to go *beyond* the time limits set by section 15(a). *See, e.g., Fox*, 980 F.3d at 1149 and 1155 (finding a "concrete

and particularized" harm where the plaintiff alleged that the defendant violated the "full panoply" of section 15(a) requirements).

127. On information and belief, more than forty (40) Illinois residents have opted out of the arbitration clause that is contained within Defendant's Terms of Service.

128. On information and belief, more than forty (40) Illinois residents have utilized the Snapchat app. without providing Defendant with informed written consent to collect, use, modify, monetize and/or store their "biometric identifiers" and/or "biometric information".

129. On information and belief, more than forty (40) Illinois residents have utilized the Snapchat app. without providing Defendant with informed written consent where Defendant unlawfully collected, used, modified, monetized and/or stored their "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by BIPA.

130. Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members without their informed written consent.

131. Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

132. The proposed Class is defined as:

> All Illinois citizens ("Users") who used Snap Inc.'s Snapchat app. where the app.'s Lenses Feature, Filters and other features collected, captured and otherwise obtained the "biometric information" and/or "biometric identifiers" of Users without Snap Inc. first obtaining informed a "written release" as these terms are defined by the Illinois Biometric Information Privacy Act, 740 ILCS 14/10.

133. The proposed Class is so numerous that the individual joinder of all members is impracticable.

134.    Common questions of law or fact exist as a result of Defendant's violations of BIPA.

135.    Plaintiffs' claims are typical of the claims of putative class members.

136.     The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

137.    Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

138.    Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

139.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

140.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

141.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

142.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

143.    The proposed Class can be ascertained from Defendant's records.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a.  Liquidated damages for negligent violations of Section 15(a);
b.  Liquidated damages for intentional and/or reckless violations of Section 15(a);
c.  Reasonable attorney's fees and costs;
d.  Enjoining Defendant from further violations of Section 15(a);and
e.  Certifying the proposed Class set forth above.

**Count II – Asserting Violations of Section 15(b) of BIPA**

144.    Plaintiffs allege and reassert Paragraphs 1-109 as if fully set forth above:

145.    Section 15b of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following three (3) actions:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

22

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b)(1)-(3).

146.     As set forth in Section III, Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs and putative class members in writing that the Snapchat app. was storing or collecting their "biometric identifiers" or "biometric information". 740 ILCS 14/15(b)(1).

147.     As set forth in Section III, Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiffs and putative class members in writing of the specific purpose and length of term for which their "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

148.     As set forth in Section III, Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release executed by Plaintiffs and putative class members before Defendant collected their "biometric identifiers" and/or "biometric information". 740 ILCS 14/15(b)(3).

149.     Violations of Section 15(b) of BIPA result in concrete injuries:

As the Illinois Supreme Court recognized in *Rosenbach*, the informed-consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained. The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information. Compass's failure to abide by the requirements of section 15(b) before it collected Smart Market users' fingerprints denied Bryant and others like her the opportunity to consider whether the terms of that collection and usage were acceptable given the attendant risks.

This was not a failure to satisfy a purely procedural requirement. Rather, as in Robertson, Compass withheld substantive information to which Bryant was entitled and thereby deprived her of the ability to give the

23

> informed consent section 15(b) mandates. Equipped with the missing information, she may have chosen not to use the vending machines and instead brought her own lunch or snacks. Or she may have opted for the convenience of the machines. She did not realize that there was a choice to be made and what the costs and benefits were for each option. This deprivation is a concrete injury-in-fact that is particularized to Bryant. She thus meets the requirements for Article III standing on her section 15(b) claim.

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

150. The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of Section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

151. Defendant's collection, use, modification, monetization and/or storage of Plaintiff and putative class members' "biometric identifiers" and/or "biometric information" - without informed written consent - violates Section 15(b).

152. Plaintiffs and putative class members have utilized the Snapchat app. in a manner that has resulted in Defendant in collecting, using, modifying, monetizing and/or storing their "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by BIPA.

153. Defendant did not obtain the informed written consent of Plaintiffs and putative class members to allow the Snapchat app. to collect, use, modify, monetize and/or store their "biometric identifiers" and/or "biometric information".

154. Defendant profits from its use of Snapchat's Lenses Feature and Filters where Defendant has unlawfully obtained the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members.

155. The Snapchat app. also utilizes so-called "Sponsored Lenses" that are utilized by in conjunction with Defendant's sponsors.

24

156.    On information and belief, "Sponsored Lenses" have violated Section 15(b) of BIPA by obtaining and/or collecting the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members – without their informed written consent.

157.    The Snapchat app. also utilizes so-called "Sponsored Filters" that are utilized by in conjunction with Defendant's sponsors.

158.    On information and belief, "Sponsored Filters" have violated Section 15(b) of BIPA by obtaining and/or collecting the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members – without their informed written consent.

159.    On information and belief, more than forty (40) Illinois residents have opted out of the arbitration clause that is contained within Defendant's Terms of Service.

160.    On information and belief, more than forty (40) Illinois residents have utilized the Snapchat app. without providing Defendant with informed written consent to collect, use, modify, monetize and/or store their "biometric identifiers" and/or "biometric information".

161.    On information and belief, more than forty (40) Illinois residents have utilized the Snapchat app. without providing Defendant with informed written consent where Defendant unlawfully collected, used, modified, monetize and/or stored their "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by BIPA.

162.    Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members without their informed written consent.

163. Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

164. The proposed Class is defined as:

> All Illinois citizens ("Users") who used Snap Inc.'s Snapchat app. where the Snap Inc.'s Snapchat app. collected, captured and otherwise obtained the "biometric information" and/or "biometric identifiers" of Users without first obtaining informed a "written release" as these terms are defined by the Illinois Biometric Information Privacy Act, 740 ILCS 14/10.

165. The proposed Class is so numerous that the individual joinder of all members is impracticable.

166. Common questions of law or fact exist as a result of Defendant's violations of BIPA.

167. Plaintiffs' claims are typical of the claims of putative class members.

168. The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

169. Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

170. Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering

Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

171.  The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

172.  The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

173.  The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

174.  The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

175.  The proposed Class can be ascertained from Defendant's records

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a.  Liquidated damages for negligent violations of Section 15(b);
b.  Liquidated damages for intentional and/or reckless violations of Section 15(b);
c.  Reasonable attorney's fees and costs;
d.  Enjoining Defendant from further violations of Section 15(b);and
e.  Certifying the proposed Class set forth above.

**Count III – Asserting Violations of Section 15(c) of BIPA**

176.  Plaintiffs allege and reassert Paragraphs 1-109 as if fully set forth above:

27

177.    Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

178.    Section 15(c) of BIPA "flatly prohibits" the above specified for-profit transactions involving biometric data. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021).

179.    Defendant cannot avoid liability for violating Section 15 by obtaining the informed written consent Plaintiff and putative class members.

180.    Plaintiffs and putative class members have been harmed by Defendant profiting off of the sale, lease, trade, and/or monetization of their "biometric identifiers" and/or "biometric information."

181.    As set forth above in Section III, on information and belief, Defendant has failed to disclose to Plaintiffs and putative Class members that it has sold their biometric identifier and/or biometric information to third parties.

182.    Further, Defendant has sold, leased, traded, and/or monetization the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members.

183.    The proposed Class is defined as:

> All Illinois citizens ("Users") who used Snap Inc.'s Snapchat app.
> where the app.'s Lenses Feature, Filters and other features
> collected, captured and otherwise obtained the "biometric
> information" and/or "biometric identifiers" of Users (as these terms
> are defined by the Illinois Biometric Information Privacy Act, 740
> ILCS 14/10) and Snap Inc. thereafter sold, leased, traded, or
> otherwise profited from a Users' "biometric identifier" or "biometric
> information."

184.    The proposed Class is so numerous that the individual joinder of all members is impracticable.

28

185.    Common questions of law or fact exist as a result of Defendant's violations of BIPA.

186.    Plaintiffs' claims are typical of the claims of putative class members.

187.    The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

188.    Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

189.    Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

190.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

191.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

192. The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

193. The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

194. The proposed Class can be ascertained from Defendant's records.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

    a. Liquidated damages for negligent violations of Section 15(c);

    b. Liquidated damages for intentional and/or reckless violations of Section 15(c);

    c. Reasonable attorney's fees and costs;

    d. Enjoining Defendant from further violations of Section 15(c); and

    e. Certifying the proposed Class set forth above.

**Count IV – Asserting Violations of Section 15(d) of BIPA**

195. Plaintiffs allege and reassert Paragraphs 1-109 as if fully set forth above:

196. Section 15(d) prohibits a private entity in possession of biometric data from disclosing or disseminating that data except in certain circumstances, such as obtaining a subject's consent. 740 ILCS 14/15(d).

197. In full, Section 15(d) of BIPA states as follows:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

    (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

See, 740 ILCS 14/15(d).

198.    Defendant has violated Section 15(d) of BIPA because it has disclosed, redisclosed, and/or otherwise disseminated Plaintiffs and putative class members' "biometric identifiers" and/or "biometric information" without their informed written consent.

199.    For example, Defendant has violated Section 15(d) of BIPA by disclosing, redisclosing, and/or otherwise disseminating Plaintiffs and putative class members' "biometric identifiers" and/or "biometric information" to third-parties - without the informed written consent Plaintiffs and putative class members.

200.    The Seventh Circuit has held that the unlawful disclosure of biometric data invades an individual's private domain "just as surely as an unconsented collection or retention does." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021)

201.    The unlawful disclosure of an individual's biometric data inflicts an injury that satisfies Article III. *Id.*

202.    The proposed Class is defined as:

All Illinois citizens ("Users") who used Snap Inc.'s Snapchat app. where the app.'s Lenses Feature, Filters and other features collected, captured and otherwise obtained the "biometric information" and/or "biometric identifiers" of Users (as these terms are defined by the Illinois Biometric Information Privacy Act, 740 ILCS 14/10) and Snap Inc. disclosed, redisclosed, or otherwise disseminated Users' – "biometric information" and/or "biometric identifiers" without the consent or authorization of Users.

31

203. The proposed Class is so numerous that the individual joinder of all members is impracticable.

204. Common questions of law or fact exist as a result of Defendant's violations of BIPA.

205. Plaintiffs' claims are typical of the claims of putative class members.

206. The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

207. Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

208. Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

209. The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

210. The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

211.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

212.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

213.    The proposed Class can be ascertained from Defendant's records.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a.  Liquidated damages for negligent violations of Section 15(d);
b.  Liquidated damages for intentional and/or reckless violations of Section 15(d);
c.  Reasonable attorney's fees and costs;
d.  Enjoining Defendant from further violations of Section 15(d); and
e.  Certifying the proposed Class set forth above.

**Jury Demand**

Plaintiffs demand a jury trial.

*James C. Vlahakis*                                    Dated: 5/11/2022

James C. Vlahakis
Senior Counsel
Sulaiman Law Group, Ltd.
2500 S. Highland Ave. Suite 200
Lombard, IL 60148
630-581-5456
Fax: 630-575-8188
jvlahakis@sulaimanlaw.com